IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

FILED

03 APR 24  PM 3: 33

U.S. DISTRICT COURT
N.D. OF ALABAMA

JOHNNY C. MCCLAIN, et al.,      )
                                )
       Plaintiffs,              )
                                )
                                )      CIVIL ACTION NO.
v.                              )      01-AR-1801-S
                                )
METABOLIFE                      )
INTERNATIONAL, INC.,            )
                                )
       Defendant.               )

ENTERED

APR 2 4 2003

## MEMORANDUM OPINION

The court has before it alternative motions by defendant, Metabolife International, Inc. ("Metabolife"), for judgments notwithstanding the verdicts, for new trials, and for remittiturs to reduce six separate jury verdicts for their alleged excessiveness. Harboring severe doubts about the necessity of holding the so-called *Hammond/Green Oil* hearing described by the Supreme Court of Alabama in *Hammond v. City of Gadsden*, 493 So. 2d 1374 (Ala. 1986), and *Green Oil Co. v. Hornsby*, 539 So. 2d 218 (Ala. 1989), the court nevertheless conducted such a hearing at Metabolife's insistence after plaintiffs conceded that such a hearing was necessary under the Eleventh Circuit's instruction in *American Employers Ins. Co. v. Southern Seeding Services, Inc.*, 931 F. 2d 1453 (11th Cir. 1991).

In this case, seven plaintiffs (really, their lawyers) chose jointly to file a single complaint against Metabolife under the Alabama Extended Manufacturers Liability Doctrine ("AEMLD"). The



complaint claimed that a diet pill called "Metabolife 356," containing ephedra and caffeine, manufactured and marketed by Metabolife, was defective and unsafe and caused personal injury to Annie McClain, Shirley Franks, Connie Thornburg and Wilmer Hudson, and caused indirect injury to spouses, Johnny McClain, Roman Franks and Jeffrey Thornburg.  Ms. Franks and Ms. Thornburg also made claims for fraud based on alleged material misrepresentations of fact printed on the bottles of Metabolife 356 they bought.  After lengthy pretrial proceedings, including a contentious *Daubert* hearing, and after a lengthy trial during which Metabolife 356 was roundly criticized by plaintiffs' experts as being dangerous to the consuming public and likely to cause harm of the kinds allegedly suffered by plaintiffs, and during which Metabolife raised and preserved numerous possible errors, the jury found in response to special interrogatories, the following:

### **Annie McClain**

A.   By a preponderance of the evidence that defendant sold Metabolife 356 to Ms. McClain in a defective condition in violation of AEMLD.

B.   That Ms. McClain was herself guilty of contributory negligence.

C.   By clear and convincing evidence that defendant engaged in the manufacture and sale of its product with a reckless or conscious disregard of the rights or safety of others, and that its

said wanton conduct constituted an AEMLD violation.

D.   By clear and convincing evidence that Ms. McClain suffered $500,000 in actual damages as a proximate consequence of Metabolife's wanton AEMLD violation.

E.   That Ms. McClain is due exemplary damages of $1,000,000 to punish defendant for its wanton AEMLD violation.

### Johnny McClain

A.   That Johnny McClain sustained actual damages of $100,000 as a proximate consequence of his spouse's injury arising under AEMLD.

### Shirley Franks

A.   By a preponderance of the evidence that defendant sold Metabolife 356 to Ms. Franks in a defective condition in violation of AEMLD.

B.   That Ms. Franks was herself guilty of contributory negligence.

C.   By clear and convincing evidence that defendant engaged in the manufacture and sale of its product with a reckless or conscious disregard of the rights or safety of others, and that its said wanton conduct constituted an AEMLD violation.

D.   By clear and convincing evidence that Ms. Franks suffered $50,000 in actual damages as a proximate consequence of Metabolife's wanton AEMLD violation.

E.   That Ms. Franks is due exemplary damages of $1,000,000 to

3

punish defendant for its wanton AEMLD violation.

F.   By a preponderance of the evidence that defendant negligently misrepresented to Ms. Franks a material fact, and that its said fraud proximately caused her $100,000 in non-duplicative actual damages.

G.   By clear and convincing evidence that defendant consciously and intentionally misrepresented to Ms. Franks a material fact and by clear and convincing evidence that as a proximate consequence she sustained non-duplicative actual damages of $50,000.

H.   That Ms. Franks is due non-duplicative exemplary damages of $1,000,000 to punish Metabolife for its intentional fraud.

### Roman Franks

A.   That Roman Franks sustained actual damages of $150,000 as a proximate consequence of his spouse's injury arising under AEMLD.

### Connie Thornburg

A.   By a preponderance of the evidence that defendant sold Metabolife 356 to Ms. Thornburg in a defective condition in violation of AEMLD.

B.   That Ms. Thornburg was herself guilty of contributory negligence.

C.   By clear and convincing evidence that defendant engaged in the manufacture and sale of its product with a reckless or conscious disregard of the rights or safety of others, and that its

4

said wanton conduct constituted an AEMLD violation.

D.   That Ms. Thornburg suffered $1,000 in actual damages as a proximate consequence of Metabolife's wanton AEMLD violation.

E.   That Ms. Thornburg is due exemplary damages of $25,000 to punish Metabolife for its wanton violation of AEMLD.

F.   By preponderance of the evidence that defendant negligently misrepresented to Ms. Thornburg a material fact and that its said fraud proximately caused her $10,000 in non-duplicative actual damages.

G.   By clear and convincing evidence that defendant consciously and intentionally misrepresented to Ms. Thornburg a material fact, but as a proximate consequence thereof she sustained no non-duplicative actual damages.

H.   That Ms. Thornburg is due non-duplicative exemplary damages of $75,000 to punish defendant for its intentional fraud.

### Jeffrey Thornburg

A.   That Jeffrey Thornburg sustained no actual damages as a proximate consequence of his spouse's injury arising under AEMLD.

### Wilmer Hudson

A.   By a preponderance of the evidence that defendant sold Metabolife 356 to Mr. Hudson in a defective condition in violation of AEMLD.

B.   That Mr. Hudson was not guilty of contributory negligence.

C.   That as a proximate consequence of defendant's AEMLD violation, Mr. Hudson suffered actual damages of $7,500.

D.   That Mr. Hudson failed to prove any basis for an award of punitive damages.

### Are Any of The Punitive Awards Excessive?

Before ruling on Metabolife's post-judgment motions, the court deliberately waited for the Supreme Court to decide *State Farm Mutual Automobile Insurance Company v. Campbell*, ___ U.S. ___, ___ S. Ct. ___, 2003 WL 1791206, which was decided on April 7, 2003. The court hoped that *State Farm* would provide help for ruling on Metabolife's claim that the punitive damages imposed in these cases are excessive. Now the court is not sure that the wait was worth it.  In the first place, the court is not sure that it fully comprehends all of the possible lessons in *State Farm*.  The court does know that the facts and procedural circumstances in *Metabolife* do not fit neatly into the factual and procedural framework of *State Farm*, in which six members of the Supreme Court undertook the daunting task of taking *BMW of North America, Inc. v. Gore*, 517 U.S. 559, 116 S. Ct. 1589 (1996), and *Cooper Industries, Inc. v. Leatherman Tool Group, Inc.*, 532 U.S. 424, 121 S. Ct. 1678 (2001), another step toward furnishing something lower courts can use when called upon to trim outlandish punitive awards.

In *State Farm*, the conduct complained of was admittedly egregious.  The Supreme Court acknowledged that State Farm's

6

conduct deserved a severe sanction.  This court need not repeat in sordid detail State Farm's punishable conduct.  For the purposes of applying whatever lessons *State Farm* has for this case, the two most important facts in that case were (1) the actual damage (which consisted solely of mental anguish) awarded by the jury was $2.6 million, and (2) the punitive damage award was $145 million.  In finding that punitive damages of $145 million exceeded what is allowable under the Due Process Clause of the Fourteenth Amendment, the Supreme Court said some things that this court finds helpful, and some things that provide little or no help for this court as it gropes for answers to several questions.

### The Financial Impact of Punitive Damages on a Defendant

This court is not helped by the Supreme Court's faulting of the Utah Supreme Court for relying "upon State Farm's 'massive wealth'" when it reinstated the $145 million punitive award that the trial court had reduced.  Id at *5.  In the instant case, Metabolife has expressly withdrawn the prominent allegation originally contained in its post-judgment motion that these punitive awards would, in effect, put it out of business.  This retreat eliminates the court's need to consider the effect, if any, on Metabolife's viability as a continuing enterprise in the event the punitive damages in this case are not eliminated or drastically reduced.  Before *State Farm*, the financial impact of punitive damages had been universally thought of as an important criterion

7

for deciding what is and what is not appropriate for accomplishing the purpose of deterrence. This was certainly a core consideration for the courts in *Hammond,* in *Green Oil*, in *BMW*, and in *Cooper Industries*. Now, this court is not sure whether the financial impact on a defendant is a thing to be considered. Historically and hypothetically, the idea was that while $10,000 may be adequate punishment for an impecunious malefactor, the same egregious misconduct might call for $100,000 in exemplary damages if the tortfeasor is wealthy. Either Metabolife's amendment to its post-judgment position, removing the allegation of an adverse financial impact, inadvertently anticipated *State Farm* or Metabolife recognizes that these particular punitive awards will not materially affect its balance sheet.

### Punishment For Conduct That is Extraterritorial or Does Not Injure The Plaintiff

The fact that the jury in *State Farm* was exposed to evidence of State Farm's similar nefarious practices in states other than Utah, and was encouraged to punish State Farm for its widespread similar or identical chicanery rather than to limit the jury's inquiry to State Farm's conduct vis-a-vis the particular plaintiffs who resided in Utah and who were suing State Farm for a particularized, local act of bad faith, is not applicable to the *Metabolife* verdicts. Although plaintiffs' counsel, as plaintiffs' lawyers do, made the time honored argument "Send Them A Message," there was no attempt by plaintiffs in the instant case to punish

8

Metabolife for what it may have done to the great-diet-pill-consuming-public beyond the four consumers in this case. The punishment administered beyond Utah in *State Farm* clearly affected the outcome in that case. Extraterritorial punishment is not involved in *Metabolife*.

### Possible Duplication of Compensatory Damages by The Punitive Awards

Another unhelpful concept found in *State Farm* is the Supreme Court's adoption of the following expression from Restatement (2d) of Torts § 908 Commentary *c*, p. 466 (1977):

> "In many cases in which compensatory damages include an amount for emotional distress, such as humiliation or indignation aroused by the defendant's act, there is no clear line of demarcation between punishment and compensation and a verdict for a specified amount frequently includes elements of both."

Id. at *12. In *State Farm* **all** of the actual damages were for distress. It therefore made sense for the Supreme Court to say:

> The compensatory damages for the injuries suffered here, moreover, likely were based on a component which was duplicated in the punitive award. Much of the distress was caused by the outrage and humiliation the Campbells suffered at the actions of their insurer; and it is a major role of punitive damages to condemn such conduct. Compensatory damages, however, already contain this punitive element.

Id. In the case now under post-verdict examination, this court gave the jury special interrogatories that allowed it to lump physical pain and suffering with mental anguish. It is impossible to detect what portion, if any, of the compensatory damages in

9

*Metabolife* was for physical pain and suffering and what portion, if any, was for distress.  For this reason, it is not possible to discount the punitive awards by a retrospective finding that they overlap awards for distress.  For aught appearing, the compensatory damages in *Metabolife* were **all** for physical pain and suffering.

### The Ratio of Compensatory Damages to Punitive Damages

*State Farm* begins to provide real help at the place where the Supreme Court said:

> We decline again to impose a bright-line ratio which a punitive damages award cannot exceed.  Our jurisprudence and the principles it has now established demonstrate, however, that, in practice, **few awards exceeding a single-digit ratio between punitive and compensatory damages, to a significant degree, will satisfy due process**.  In *Haslip*, in upholding a punitive damages award, we concluded that an award of more than four times the amount of compensatory damages might be close to the line of constitutional impropriety.  499 U.S., at 23-24, 111 S. Ct. 1032.  We cited that 4- to-1 ratio again in *Gore*.  517 U.S., at 581. 116 S. Ct. 1589.  The Court further referenced a long legislative history, dating back over 700 years and going forward to today, providing for sanctions of double, treble, or quadruple damages to deter and punish.  *Id*, at 581, and n. 33.  While these ratios are not binding, they are instructive.  They demonstrate what should be obvious:  **Single-digit multipliers are more likely to comport with due process**, while still achieving the State's goals of deterrence and retribution, than awards with ratios in range of 500 to 1, *id*, at 582, 116 S. Ct. 1589, or, in this case, of 145 to 1.

(emphasis supplied).

Id. at *11.  The Court used "145 to 1" instead of "145 to 2.6," because the trial court in *State Farm* had ordered a remittitur of the compensatory damages from $2.6 million to $1 million, and that

10

remittitur was not disturbed by the Utah Supreme Court when it restored the excessive $145 million punitive award.  This court sees no reason to worry about whether the controlling ratio is the ratio between the amounts of compensatory and punitive damages awarded by the jury or those allowed by the appellate court, because the disparity between compensatory and punitive in *State Farm* was astronomical, no matter which comparison is used.

As this court reads *State Farm*, if the ratio of punitive to compensatory damages exceeds 9 (the highest possible single digit), a red flag goes up.  This is the most potent ingredient in the witch's brew.  Assuming *arguendo* that a multiplier of 9 or less means that the punitive damages presumptively passes muster under the Due Process Clause, Metabolife's challenges to most of the punitive damage awards in this case are eliminated.  The punitive award of $1 million in favor of Ms. McClain for the AEMLD violation is not excessive, because her related actual damages were $500,000. A multiplier of 2 easily meets the new ratio test.  The same is not true of Ms. Franks' $1 million punitive award for the AEMLD violation because it is 20 times greater than her $50,000 in actual damages.  However, it is true of Ms. Franks' $1 million punitive damages award for the intentional fraud.  This punitive item is only 6.66 times Ms. Frank's $150,000 in actual damages for fraud, found not to have been duplicative of the actual damages caused by the defect itself.  The complication arising from the separate

11

awarding of compensatory and punitive damages for separate, if connected, torts will be discussed *infra*. Ms. Thornburg's $25,000 in punitive damages for the AEMLD violation is 25 times her $1,000 in actual damages, and accordingly, is automatically suspect if a 9 to 1 maximum ratio is strictly applied. On the other hand, her $75,000 to punish Metabolife for fraud, as compared to her $10,000 in actual damages from the fraud, easily passes the single digit multiplier test.

### The Degree of Reprehensibility

Both the Alabama and the federal cases that explicate the factors for evaluating a punitive award for possible excessiveness place at or near the top of the list, the degree of **reprehensibility** of the conduct being punished. In the present case, each of the punitive verdicts under AEMLD was prefaced by a jury finding, **by clear and convincing evidence**, that the manufacturer acted with a deliberate and reckless disregard for the rights and safety of the consumer. Either this jury finding by a higher burden of proof that Metabolife was guilty of gross wantonness constituted a finding of reprehensibility that binds the court, or the issue of wantonness should never have been submitted to the jury. It is Metabolife's argument in support of its motion for summary judgment under Rule 56, F.R.Civ.P., and for its motion for judgment as a matter of law under Rule 50(a), F.R.Civ.P., and in its present motion for judgment notwithstanding the verdict,

that plaintiffs did not meet their burden of proof of wanton conduct by clear and convincing evidence.  This court need not say what it would have done if it had been the factfinder, but it is willing to express its conclusion that the medical literature received into evidence at trial and at the *Hammond/Green Oil* hearing, and the expert testimony received at trial, while hotly disputed, furnished a substantial evidentiary basis for the jury's finding that ephedra and caffeine in combination is a compound that is too dangerous to be sold to the general public, and that knowingly marketing it was a tort that deserves punishment.  For a manufacturer deliberately to subject the consuming public to the risk of suffering a stroke is the kind of conduct for which exemplary damages were designed.  Metabolife, of course, challenges the court's allowance of plaintiffs' medical and scientific evidence, both before, during and after the *Daubert* hearing.  If the court was wrong to deny Metabolife's *in limine* motions seeking to exclude this evidence, Metabolife 356 would have received no evidentiary criticism, and the controversy would have been resolved in Metabolife's favor under Rule 56 or Rule 50(a).  That is not the question now before the court.

Out of respect for the Seventh Amendment, a trial court could perhaps submit to the jury a special interrogatory by which the jury would be called upon to rate the degree of a defendant's reprehensibility on a scale of 1 to 10.  As of now, for the purpose

of preventing the amount of punitive damages from exceeding the Due
Process limitation, the degree of reprehensibility must be decided
by the trial court and, on appeal, by the appellate court, with or
without deference to the trial court.

**The Fraud Verdicts on Top**
**of the AEMLD Verdicts**

As reflected above, the punitive awards that were imposed to
punish Metabolife's fraud were entered in favor of the only two
plaintiffs who testified that they bought bottles of Metabolife 356
after reading the label, relying upon what the label said, i.e.:

INDEPENDENTLY LABORATORY TESTED FOR * **SAFETY** *

(emphasis on bottle, prominently displayed).
Although Metabolife undertook to prove that this promotional
assertion was true, and although there was admittedly a warning or
disclaimer of sorts on the bottle, the jury obviously did not
believe that the product had been **"independently"** tested in a
**"laboratory"** for **"safety"**.  In fact, a later edition of the bottle
conspicuously left off this ostentatious safety claim.  There was
ample evidence upon which the jury could have found, as this jury
obviously did, that the statement on the bottle was not true, was
misleading, and was intended to mislead.  To induce a purchaser to
believe that an independent laboratory has passed upon the safety
of a diet pill, is arguably more reprehensible than placing the
dangerous product on the market in the first place.  But, is it

14

reprehensible enough to require the defrauder to pay $1 million to one person while only paying $75,000 to another person, when both of them relied upon the same misrepresentation, and when the perpetrator does not suggest that the aggregate of $1,075,000 would put it out of business?

The great disparity between these two punitive awards for the same act of intentional fraud is no more than the product of a jury's traditional right to judge the degree of reprehensibility differently as between particular plaintiffs who have suffered differing amounts of actual damages.  If juries were called upon in all cases to make the punishment precisely the same for precisely the same conduct, this court would have to reduce Ms. Franks' punitive award from $1 million to $75,000, or would have to increase Ms. Thornburg's award from $75,000 to $1 million, or would have to split the difference and give them each $537,500.  The court will resolve this possible dilemma by leaving well enough alone.

### **Actual and Punitive Damages Twice in the Same Case?**

Metabolife has not argued that a consumer who is harmed by a defect and also by a fraud can only sustain actual damages for pain and suffering once.  Ms. Franks and Ms. Thornburg were awarded separate amounts of compensatory damages for the personal injuries they sustained, first resulting from the defective product, and second resulting from the fraud.  The jury was instructed not to

compensate twice for the same loss.  The court must assume that the jury followed its instructions, difficult as it may have been.  The court concedes that it is easier to rationalize the awarding of punitive damages for separate punishable torts than it is to rationalize the awarding of compensatory damages twice when actual damages may have resulted from separate but connected torts.  This is one of the prices the judicial system pays for having to contend with the Seventh Amendment, which guarantees trial by jury in civil cases.  If this court believed that these awards of **compensatory** damages were not justified by the evidence, the court would not look to *Hammond*, or to *Green Oil*, or to *BMW*, or to *Cooper Industries*, or to *State Farm*, because all of those cases deal only with the possible excessiveness of **punitive** damages.

Metabolife has asked this court to find that some, if not all, of the **compensatory** awards are excessive because not based on substantial evidence.  If Metabolife is correct in this contention, the court has the power and the obligation to order a remittitur of the compensatory damages.  As of now, there is no binding decision that allows an absolute and final reduction by the court of actual damages to the maximum allowable by the evidence.  After an order of remittitur of compensatory damages, if a plaintiff refuses to remit, the verdict would have to be vacated, and the plaintiff's case would have to be tried again.  It would necessitate a retrial of the punitive claim as well as the compensatory claim because by

16

the ratio analysis the two kinds of damages are inextricably tied together.   As Metabolife necessarily understands, a reduction in compensatory damages would necessitate a new examination of the punitive damages.   Not because of the complicated nature of a remittitur, but because there was substantial evidence in this case upon which all compensatory awards could have been based, there is no reason to order a remittitur of any compensatory award. Hypothetically, even if the compensatory damages were reduced, the ratios in this case would not be so out-of-kilter that they would create the constitutional hazard elucidated in *State Farm*.

### Overlapping Compensatory and Punitive Damages?

The fact that some of the actual damages awarded to Ms. Franks and Ms. Thornburg may have been intended to compensate them for mental anguish, and under the *State Farm* rationale, based on the Restatement, could have been duplicative of the punitive awards, has not been exploited by Metabolife.   The court understands why Metabolife has not made this argument, because it was not available until *State Farm* was decided two weeks ago, long after Metabolife filed its post-judgment motion.   Nevertheless, this court gives Metabolife the benefit of the argument and finds no possibility of duplication serious enough to justify a reduction of the punitive awards for the purpose of eliminating a possible theoretical duplication.   To do so would require speculation beyond this court's competence.

17

This leaves the court with two plaintiffs out of seven, who, as of now, have judgments that include punitive damages over nine times the amounts of their compensatory damages. These punitive damages must be examined, and, if found excessive, what should the court do about them?

## Does *Hammond/Green Oil* Still Apply?

Metabolife has expressly invoked *Hammond/Green Oil* and has asked for appropriate remittiturs as the only remedy for excessiveness. *Hammond* and *Green Oil* are both Alabama decisions that deal with principles of Alabama substantive law. As Metabolife correctly points out, the Eleventh Circuit in *American Employers*, ordered federal trial courts in Alabama to follow the procedures mandated by *Hammond/Green Oil*, and *American Employers* has not been expressly overruled. However, this court concludes that *American Employers* has been undercut to the point of being eliminated by the Supreme Court in *BMW*, *Cooper Industries*, and *State Farm*. Alternatively, *American Employers* was never applicable to *Metabolife*. *American Employers* was a diversity case in which the substantive law of Alabama was being applied by a federal court. *BMW*, *Cooper Industries* and *State Farm* all involved applications of the Due Process Clause, a federal constitutional provision, implicating a strictly federal concern. Although the analyses in the Alabama and the federal cases are parallel and often overlap, they are distinct, and the federal decisions control

18

this court as it decides the excessiveness issue in this case.

## Should the Court Order a Remittitur or an Absolute Reduction?

It would have never occurred to the courts in *Hammond*, or *Green Oil*, or *American Employers* that a trial court, state or federal, has the power to reduce a jury verdict to a precise amount and to enter a final judgment on it, bypassing the ancient and honorable procedure of remittitur.  The effect of *Johansen v. Combustion Engineering, Inc.*, 170 F. 3d 1320 (11th Cir. 1999), is to substitute for *Hammond/Green Oil* in Alabama's federal courts the same procedure for examining jury verdicts that was employed by the trial court in *Combustion Engineering* and affirmed by the Eleventh Circuit.  In *Combustion Engineering*, the trial judge reduced a punitive award from $15 million to $4.35 million and entered final judgment for the reduced amount.  This effectively changed the ratio of punitive to compensatory in that case from 400:1 to 100:1, still a three digit multiplier.  Of course, neither the trial court nor the appellate court in *Combustion Engineering* had access to *State Farm*.  Nevertheless, in *Combustion Engineering* the Eleventh Circuit said several things that are still binding on this court:

> No one would dispute that the court, not the jury, has the responsibility for determining this constitutional limit.  Courts decide questions of law, not juries.  The real issue, therefore, is whether the court may enter judgment for a constitutionally reduced award without plaintiff's consent.  So put, the question answers itself.  **Plaintiff's consent is irrelevant if the Constitution requires the reduction.**

19

(emphasis supplied).

* * * * *

Unlike a remittitur, which is discretionary with the court and which we review for an abuse of discretion, *Gasperini*, 518 U.S. at 435, 116 S.Ct. 2211, **a court has a mandatory duty to correct an unconstitutionally excessive verdict so that it conforms to the requirements of the due process clause.** *BMW*, 517 U.S. at 585, 116 S.Ct. 1589.

We conclude that, upon determination of the constitutional limit on a particular award, **the district court may enter a judgment for that amount as a matter of law.**

(emphasis supplied).

* * * * *

The court [the Fourth Circuit in *In re Bd. of County Sup'rs of Prince William County, VA*, 143 F.3d 835, 840 (4th Cir. 1998)] read *BMW* to mean that the Seventh Amendment right to a jury would not be offended by the entry of judgment for a reduced verdict required by law-by any law, including state law.

* * * * *

We hold, therefore, that $15 million was a constitutionally excessive punitive damage award in this case, and the district court correctly reduced it to $4.35 million, **the maximum the Constitution permits in this case.**

(emphasis supplied).

Id. at *1339.

There is nothing in *Combustion Engineering* to suggest that the trial court conducted anything like a *Hammond/Green Oil* hearing before deciding to reduce the punitive award to the precise maximum allowed by the Due Process Clause.   The mere fact that Metabolife

20

invokes only *Hammond/Green Oil*, does not excuse this court from discharging its obligation under *State Farm* and *Combustion Engineering*, to ascertain the maximum constitutionally allowable, and not to mess around with the jury trial that the Seventh Amendment would guarantee if that amendment had not been trumped by the Fourteenth Amendment. The new concept adopted in *Combustion Engineering* entrusts trial judges with awesome responsibility and, in fact, infuses them with miraculous powers of deduction.

How the trial court in *Combustion Engineering* arrived at the exact maximum allowed by the Due Process Clause, this court does not know. This court does know that it is ill equipped to duplicate that feat. For this reason, the court will simply use the top one digit multiplier suggested by *State Farm*, and accordingly will reduce Ms. Franks $1 million in punitive damages for Metabolife's AEMLD violation to $450,000, or nine (the highest single digit) times her compensatory award of $50,000. The fact that the jury awarded Ms. Thornbury no actual damages for Metabolife's **intentional** fraud, while it assessed $75,000 against Metabolife to punish it for that fraud, would clearly violate a strict one-digit multiplier rule, inasmuch as nine times zero is zero. Nevertheless, if Metabolife was, in fact, guilty of **negligent** fraud that caused Ms. Thornburg $10,000 in actual damages, while that defendant's **intentional** fraud caused her no duplicative actual damages, a fact that this jury also found, it is

21

not illogical to conclude that the jury found that the two varieties of fraud **together** caused Ms. Thornburg $10,000 in actual damages.  Thus, $75,000 in damages to punish conduct that resulted in actual damages of $10,000 is not excessive.  Seventy-five thousand dollars would probably not be excessive in any gross fraud case, no matter how inconsequential the actual damages were.  As an example, this court does not believe that if the compensatory damages in *State Farm* had been $5,000 instead of $1 million, the punitive damages could have exceeded $45,000 without violating the Due Process Clause because State Farm's high degree of reprehensibility could not have been truly punished and the purpose of deterrence achieved by a mere $45,000 (9 times $5,000) in exemplary damages.  A punitive award of $45,000 would have been a mere slap on the wrist.  As the Supreme Court said in *State Farm*, there is still no bright-line.  There is still room for an exercise of judicial judgment.

Congress and the various state legislatures are experimenting in this area, even contemplating something like the Sentencing Guidelines in their attempts to put a reasonable lid on punitive damages.  The extent of upward and downward departures, if any, remains to be seen.

### Another Reason for Not Following *Hammond/Green Oil*

Another reason for not looking exclusively to *Hammond/Green Oil* for guidance in evaluating the punishment money can be found in

22

the impressive defense that was interposed recently by a defendant
in another case pending in this court.   In that case, wherein the
complaint seeks a large sum of punitive damages, this brand-new
defense says:

> Plaintiff's claim for punitive damages violates the
> rights of the defendants to due process and equal
> protection of the law as guaranteed by the United States
> Constitution and the Alabama Constitution in that the
> procedure for post-trial review of punitive damages set
> forth in *Hammond v. City of Gadsden* and *Green Oil Company
> v. Hornsby* is unconstitutionally vague and inadequate in
> the following respects.
>
> (a)   The *Hammond* and *Green Oil* procedure provides
>       no clearly defined standard for courts to
>       apply in reviewing punitive damages;
>
> (b)   The *Hammond* and *Green Oil* procedure provides
>       inadequate review as to the need to deter,
>       whether deterrence has been accomplished, and
>       whether punishment is appropriate for
>       defendants;
>
> (c)   The *Hammond* and *Green Oil* procedure provides
>       inadequate review and a vague standard
>       regarding the relationship of the punitive
>       damage award to the harm;
>
> (d)   The *Hammond* and *Green Oil* procedure does not
>       address nor cure the lack of guidelines given
>       the jury in the assessment of punitive
>       damages;
>
> (e)   This procedure is inadequate in that the trial
>       court according to *Hammond* and *Green Oil* "may"
>       take certain factors into account and these
>       procedures lack predictable and objective
>       standards of review, allow for inconsistent
>       application of the factors, and allow for
>       unpredictable and inconsistent results; and
>
> (f)   The *Hammond* and *Green Oil* procedure fails to
>       provide definite and meaningful constraints on
>       jury discretion in awarding punitive damages.

This court has not asked Metabolife what it thinks about this new
defense that attacks *Hammond/Green Oil*, and that is being
interposed in virtually all punitive damages cases.  The idea is
not only intriguing but persuasive to this court.  Without hearing
from the parties on this question, this court finds that such a
defense would be mooted, not by the fact that Metabolife relies
upon *Hammond/Green Oil* rather than attacks it, but by this court's
conclusion that *BMW*, *Cooper Industries*, *Combustion Engineering* and
*State Farm*, in combination, have wiped *Hammond/Green Oil* off the
books insofar as federal courts in Alabama are concerned.

### Conclusion

Metabolife has not sought a reduction of these punitive awards
to their absolute constitutional maximums as called for by
*Combustion Engineering*.  Instead, Metabolife has asked this court,
if it does not set aside a particular verdict on motion for
judgment n.o.v., to order an appropriate remittitur.  Based on the
foregoing facts and conclusions of law, this court declines to
order a remittitur of Ms. Franks' admittedly excessive punitive
award.  Therefore, no one will ever know whether Ms. Franks would
have remitted or would have accepted a new trial if such an order
had been entered.  Instead, the court will follow *Combustion
Engineering*, will give Ms. Franks the maximum allowable by the Due
Process Clause, and accordingly will, by separate order, reduce her
punitive award for the AEMLD violation from $1 million to $450,000

(nine times the actual damages) and will deny all other requests for post-judgment relief.   The court hopes that it is being as perspicacious or as lucky as the trial court was in *Combustion Engineering* and has found the exact number that will not give Ms. Franks a dime more than the Fourteenth Amendment allows, and not a dime less.

DONE this _____ day of April, 2003.

WILLIAM M. ACKER, JR.
UNITED STATES DISTRICT JUDGE